# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Power Window Motors | 2:13-cv-02301-MOB-MKM 2:15-cv-11829-MOB-MKM |
| This Document Relates to: All Direct Purchaser Actions | |

## DENSO AND MITSUBA'S MOTION TO DISMISS DIRECT PURCHASER PLAINTIFF'S COMPLAINT IN THE POWER WINDOW MOTORS ACTION

PLEASE TAKE NOTICE that, by its counsel listed below, Defendants DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, ASMO North America, LLC, and ASMO North Carolina, Inc. (collectively, "DENSO") and Defendants Mitsuba Corporation and American Mitsuba Corporation (collectively, "Mitsuba") respectfully move this Court for an Order pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.*, and Federal Rule of Civil Procedure 12(b)(6),[1] dismissing all claims by All European Auto Supply, Inc. ("AEAS") in the *Power Window Motors* action, 2:15-cv-11829-MOB-

---

[1] Should the Court determine that dismissal under Rule 12(b)(6) is not appropriate, Defendants seek an order of dismissal under either Fed. R. Civ. P. 12(b)(3) or 12(b)(1). *See Big City Small World Bakery Café, LLC v. Francis David Corp.*, No. 16-12652, 2017 WL 2954694 (E.D. Mich. July 11, 2017) at *3, *4 (acknowledging that "there is considerable variation in how courts characterize dismissal on arbitrability grounds," and finding that dismissal under Fed. R. Civ. P. 12(b)(3) is most appropriate; *Mann v. Equifax Info. Servs.*, No. 12-14097, 2013 WL 3814257 (E.D. Mich. July 22, 2013) (dismissing arbitrable claims under Fed. R. Civ. P. 12(b)(1)).

MKM, ECF No. 1 (May 20, 2015).  In the alternative, Defendants ask that the claims be stayed pursuant to 9 U.S.C. § 3.  This motion is based on the supporting memorandum of law and such other and further material as the Court may consider.

As required by Local Rule 7.1(a), counsel for DENSO and counsel for Mitsuba sought concurrence from counsel for AEAS on September 29, 2017 via telephone conference.  During that call, counsel for Defendants explained the nature of this motion and its legal basis and requested, but did not obtain, concurrence in the relief sought (*i.e.*, dismissal of the Complaint).

WHEREFORE, DENSO and Mitsuba respectfully request that this Court issue an Order dismissing all claims by AEAS, or in the alternative, staying all claims.

Respectfully submitted,

October 26, 2017

By:  */s/ Steven F. Cherry*
Steven F. Cherry
David P. Donovan
April N. Williams
WILMER CUTLER PICKERING
   HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
april.williams@wilmerhale.com

*Counsel for Defendants DENSO Corporation,*
*DENSO International America, Inc., DENSO*
*International Korea Corporation, ASMO North*
*America, LLC, and ASMO North Carolina, Inc.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Tel.: (248) 372-8252
Fax: (248) 213-2551

steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International America, Inc.*


/s/ George A. Nicoud (w/consent)
George A. Nicoud III
Austin Schwing
Rachel S. Brass

GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Tel.: (415) 393-8200
Fax: (415) 393-8306
TNicoud@gibsondunn.com
ASchwing@gibsondunn.com
RBrass@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation and American Mitsuba Corporation*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| In Re: AUTOMOTIVE PARTS ANTITRUST LITIGATION | Master File No. 12-md-02311 Honorable Marianne O. Battani |
| In Re: Power Window Motors | 2:13-cv-02301-MOB-MKM 2:15-cv-11829-MOB-MKM |
| This Document Relates to: All Direct Purchaser Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF DENSO AND MITSUBA'S MOTION TO DISMISS DIRECT PURCHASER PLAINTIFF'S COMPLAINT IN THE <u>POWER WINDOW MOTORS ACTION</u>**

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.  Should the Court dismiss all claims in the *Power Window Motors* case, where the sole plaintiff, All European Auto Supply, Inc. ("AEAS"), seeks to recover for alleged overcharges on its purchases from Bosch, all such purchases were governed by arbitration agreements, and AEAS alleges that the prices paid under its sales agreements with Bosch were inflated because of interdependent and concerted misconduct by Bosch, DENSO, and Mitsuba (whom AEAS alleges to be agents and joint venturers of one another)?

    Answer:  Yes.

2.  Should the Court dismiss all claims in the *Power Window Motors* case where it previously considered, in the related *Spark Plugs* and *Oxygen Sensors* cases, the exact arguments Defendants assert here, based upon the same arbitration agreement between AEAS and Bosch at issue here, and dismissed all claims based on Bosch's sales?

    Answer:  Yes.

3.  In the alternative, should the Court stay all claims in the *Power Window Motors* case, where it previously held in *Spark Plugs* and *Oxygen Sensors* that nearly identical claims were arbitrable and where a stay is mandatory under 9 U.S.C. § 3 of any claims "referable to arbitration under an agreement in writing"?

    Answer:  Yes.

## <u>MOST APPROPRIATE AUTHORITIES</u>

**Cases:**

Opinion and Order Granting Defendants DENSO's and NGK's Motions to Dismiss and to Stay, 2:15-cv-03001-MOB-MKM, ECF No. 46 (Apr. 18, 2017)

Opinion and Order Denying Direct Purchaser Plaintiffs' Motion to Certify the Court's April 18, 2017 Order for Interlocutory Appeal, No. 2:15-cv-03001-MOB-MKM, ECF No. 57 (Sept. 12, 2017)

*Cole v. FES*, No. 10-12041, 2010 WL 3584270 (E.D. Mich. Sept. 13, 2010)

*Hensel v. Cargill, Inc.*, 198 F.3d 245 (Table), No. 99-3199, 1999 WL 993775 (6th Cir. 1999)

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004)

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985)

*Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409 (Mich. App. Ct. 2007)

*In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840 (D. Md. 2013)

**Statutes:**

Federal Arbitration Act, 9 U.S.C. §§ 1-16

**Rules:**

Fed. R. Civ. P.12(b)(6)

## <u>TABLE OF CONTENTS</u>

STATEMENT OF THE ISSUES PRESENTED ........................................................................ ii

MOST APPROPRIATE AUTHORITIES ........................................................................... iii

TABLE OF AUTHORITIES ............................................................................................. v

INTRODUCTION ........................................................................................................1

FACTUAL BACKGROUND .............................................................................................2

LEGAL STANDARD ....................................................................................................4

ARGUMENT ..............................................................................................................5

I.    AEAS'S CLAIMS AGAINST DENSO AND MITSUBA BASED ON AEAS'S
      PURCHASES FROM BOSCH ARE SUBJECT TO MANDATORY ARBITRATION
      AND CANNOT BE PURSUED IN FEDERAL COURT ....................................................6

      A.    AEAS's Purchases From Bosch Were Made Pursuant to Valid and Binding
            Arbitration Agreements ............................................................................6

      B.    Under the Doctrine of Equitable Estoppel, AEAS Is Required to Arbitrate Its
            Claims Against DENSO and Mitsuba That Are Based on Its Purchases From
            Bosch...............................................................................................7

      C.    Because AEAS's Claims Against DENSO and Mitsuba Are Arbitrable, the
            Complaint Should Be Dismissed, or, at the Very Least, the Claims Must Be
            Stayed...............................................................................................12

CONCLUSION ......................................................................................................... 13

# <u>TABLE OF AUTHORITIES</u>

Page(s)

## CASES

*AFSCME Council 25 v. Wayne Cty.*, 811 N.W. 2d 4 (Mich. Ct. App. 2011) .................................8

*Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) .........................................5, 8, 13

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986) .........................7

*Brown v. Pacific Life Ins. Co.*, 462 F. 3d 384 (5th Cir. 2006).........................................10

*Carroll v. Onemain Fin. Inc.*, No. 14-cv-14514, 2015 WL 7717132 (E.D. Mich. Nov. 30, 2015) .........................................................................................................5

*Cole v. FES*, No. 10-12041, 2010 WL 3584270 (E.D. Mich. Sept. 13, 2010) ...................8, 11, 12

*Drexel Burnham Lambert, Inc. v. Mancino*, 951 F. 2d 348 (Table), No. 91-3213, 1991 WL 270809 (6th Cir. 1991) ...................................................................12

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991).........................................7

*Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*, No. 09-11770, 2011 WL 835941 (E.D. Mich. Mar. 8, 2011) ...........................................................5

*Hensel v. Cargill, Inc.*, 198 F.3d 245 (Table), No. 99-3199, 1999 WL 993775 (6th Cir. 1999) ......................................................................................................5

*In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274 (4th Cir. 2007) .................................12

*In re Titanium Dioxide Antitrust Litig.*, 962 F. Supp. 2d 840 (D. Md. 2013)..................10

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ...............................11

*Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74 (D. Del. 2003).........................5

*Local Union 369 v. ADT Sec. Serv., Inc.*, 393 F. App'x 290 (6th Cir. 2010) ................................5

*Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624 (6th Cir. 2004) .............................7

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) .........................7

*MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999).........................................9

*NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807 (6th Cir. 2008) ...............................7

*Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, 742 N.W.2d 409 (Mich. App. Ct. 2007).........................................................................................11

*Shammami v. Broad Street Sec., Inc.*, 544 F. Supp. 2d 585 (E.D. Mich. 2008) ........................5, 12

## STATUTES, RULES, AND REGULATIONS

Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et. seq.* ......................................................... *passim*

The Sherman Antitrust Act, 15 U.S.C. §§ 1–7 ............................................................2, 6, 7, 9, 10

Mich. Comp. Laws Ann. § 440.1303 ...........................................................................................12

Fed. R. Civ. P. 12(b)(6)..............................................................................................................4, 5

## INTRODUCTION

This motion presents an issue that this Court has already decided in two other cases. The motion is necessary only because the sole plaintiff here—All European Auto Supply, Inc. ("AEAS")—has declined to voluntarily dismiss its claims so that it can preserve its right to appeal the Court's dismissal. On April 18, 2017, the Court granted motions by DENSO (and co-defendant NGK) to dismiss all claims by the Direct Purchaser Plaintiffs ("DPPs") in the *Spark Plugs* and *Oxygen Sensors* cases that were based on the DPPs' purchases from Bosch because the terms of DPPs' agreements with Bosch required them to arbitrate those claims. This case poses the exact same issue as in *Spark Plugs* and *Oxygen Sensors,* based upon the same Bosch arbitration agreement. AEAS was one of the DPPs in *Oxygen Sensors*. There is no legal basis for the outcome here to be any different than it was in the prior cases: dismissal of AEAS's claims.

AEAS's claims are based on alleged overcharges to AEAS in its purchases of Power Window Motors. But the only Defendant from which AEAS bought Power Window Motors was Bosch, and AEAS is required by the terms of Bosch's sales contracts to resolve disputes through arbitration. AEAS effectively conceded that all of its claims against Bosch were subject to binding arbitration when it voluntarily dismissed Bosch as a defendant, first from this case, nearly two years ago, and then from *Oxygen Sensors*. As the Court previously ruled in *Spark Plugs* and *Oxygen Sensors*, AEAS cannot avoid its obligation to arbitrate claims arising out of its purchases from Bosch—including its claims against DENSO and Mitsuba for joint and several liability for overcharges on AEAS's purchases from Bosch—merely by dropping Bosch from the case. The only sales at issue in this case are by Bosch, and under the doctrine of equitable estoppel, all claims based on Bosch's sales must be arbitrated. Accordingly, the Court should dismiss all of the claims in this case and require AEAS to pursue them, if at all, in arbitration, just as it did in *Spark Plugs* and *Oxygen Sensors*.

## FACTUAL BACKGROUND

On May 20, 2015, AEAS filed a complaint against DENSO Corporation, DENSO International America, Inc., DENSO International Korea Corporation, ASMO North America, LLC, and ASMO North Carolina, Inc. (collectively, "DENSO"); Mitsuba Corporation and American Mitsuba Corporation (collectively, "Mitsuba"); and Robert Bosch GmbH, Bosch Electrical Drives Co., Ltd., and Robert Bosch LLC (collectively, "Bosch").  Class Action Complaint, No. 2:15-cv-11829-VAR-MJH, ECF No. 1 (May 20, 2015) ("Complaint").  The Complaint is styled as an antitrust action under federal law that arises out of an alleged conspiracy among Bosch, Mitsuba, and DENSO to fix prices for Power Window Motors sold by these Defendants to direct purchasers, in violation of Section 1 of the Sherman Act.  *Id.* at ¶¶ 82-87.

As shown by the attached declarations, neither DENSO nor Mitsuba sold Power Window Motors to AEAS.  The only entity named in the Complaint that sold Power Window Motors to AEAS was Bosch.  *See* Exs. 1-4 (DENSO Declarations); Exs. 5-6 (Mitsuba Declarations); Ex. 7 (Bosch Invoice[1]).  Bosch's Terms and Conditions governing its sales provide that all disputes "arising out of or related to [the] Agreement" will be settled by "binding arbitration" held in Detroit.  Ex. 8 (Bosch's Terms and Conditions) ¶ 19.  Similarly, Bosch's invoices for Power Window Motors, which set out the price terms for these parts, state that all purchases are subject to Bosch's general terms and conditions, which contain the arbitration clause.  *See, e.g.*, Ex. 7 (Bosch Invoice).  DENSO and Mitsuba understand that in December 2015, Bosch notified AEAS that its claims against Bosch were subject to binding arbitration, and on January 11, 2016, AEAS dismissed Bosch from the *Power Window Motors* case.  Notice of Voluntary Dismissal of Claims Against the Bosch Defendants by Plaintiff All European Auto Supply, Inc., No. 2:15-cv-11829-

---

[1] Pricing information has been redacted from this invoice.

MOB-MKM, ECF No. 18 (Jan. 11, 2016).

Because neither Mitsuba nor DENSO sold Power Window Motors to AEAS, AEAS's claims against both Defendants can only be based on their alleged joint and several liability for overcharges to AEAS on its purchases from Bosch. On March 14, 2017, the parties agreed to stay filing of a motion to dismiss in *Power Window Motors* based upon the Bosch arbitration requirement until the Court ruled on the pending motions to dismiss in the *Spark Plugs* and *Oxygen Sensors* cases, in which DENSO and the other defendant (NGK) had sought dismissal of claims by AEAS and other plaintiffs on virtually identical grounds. Ex. 9 (Letter from Steve Cherry to David Young (Mar. 6, 2017)).

On April 18, 2017, the Court granted the motion to dismiss all claims in the *Spark Plugs* and *Oxygen Sensors* cases that were premised on joint and several liability by DENSO (and its co-defendant NGK) for sales by Bosch. Opinion and Order Granting Defendants DENSO's and NGK's Motions to Dismiss and to Stay, No. 2:15-cv-03001-MOB-MKM, ECF No. 46 (Apr. 18, 2017) ("Spark Plugs/Oxygen Sensors Order"). As here, DPPs in the *Spark Plugs* and *Oxygen Sensors* cases had dismissed their claims against Bosch based upon binding arbitration agreements in their purchase agreements with Bosch. As here, Defendants DENSO and NGK moved to dismiss or stay all claims against them based on joint and several liability for sales by Bosch on the ground of equitable estoppel. The Court granted those motions, dismissing all claims against DENSO and NGK based on DPPs' purchases from Bosch, holding that these claims were arbitrable under the doctrine of equitable estoppel. *Id.* at 18, 21, 24. For the same reason, the Court dismissed all claims against NGK based on DPPs' purchases from DENSO, which also were subject to binding arbitration agreements. *Id.* at 22.[2]

---

[2] The Court stayed the claims against DENSO and NGK that were based on DPPs' purchases from

Following the Court's ruling, DPPs in *Spark Plugs/Oxygen Sensors* sought certification of the Court's Order for interlocutory review. On September 12, 2017, the Court denied DPPs' motion, observing that the Court had "conducted a thorough review of the case law," and holding that DPPs had failed to "cite any case law demonstrating that the Michigan test for equitable estoppel is not met under the facts and circumstances presented here." Opinion and Order Denying Direct Purchaser Plaintiffs' Motion to Certify the Court's April 18, 2017 Order for Interlocutory Appeal, No. 2:15-cv-03001-MOB-MKM, ECF No. 57 (Sept. 12, 2017) ("Order for Interlocutory Appeal"), at 7-8.

The parties here met and conferred again on September 29, 2017,[3] at which time AEAS acknowledged that the issue here is identical to that with respect to its claims based upon its purchases from Bosch in *Spark Plugs* and *Oxygen Sensors*, and that there was no factual or legal basis for a different outcome in *Power Window Motors*. AEAS declined to voluntarily dismiss its Complaint in order to preserve the issue for appeal.

## LEGAL STANDARD

The Sixth Circuit, courts in this district, and this Court have all recognized that dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when all of a plaintiff's claims are arbitrable. *See* Spark Plugs/Oxygen Sensors Order at 5 ("[T]he Sixth Circuit has determined that dismissal without prejudice pursuant to Rule 12(b)(6) is also appropriate where a plaintiff's claims

---

NGK, holding that although NGK's agreements with DPPs did not have arbitration clauses, all of the DPPs' claims "depend[ed] on a common core of facts and [were] inherently inseparable," and so a stay of the litigation of the non-arbitrable claims was appropriate pending the completion of arbitration proceedings for the arbitrable claims. *Id.* at 20.

[3] The parties previously had agreed to postpone Defendants' motion to dismiss until after the Court had ruled on DPPs' motion to certify the Order in *Spark Plugs/Oxygen Sensors* for interlocutory review. *See* Stipulation and Order Staying the Case and Extending the Time for Defendants to File Responses to Direct Purchaser Plaintiffs' Complaint, No. 2:13-cv-02301-MOB-MKM, ECF No. 39 (Sept. 8, 2017).

4

are subject to arbitration.") (citing *Local Union 369 v. ADT Sec. Serv., Inc.*, 393 F. App'x 290, 293 (6th Cir. 2010)); *Gordon v. Royal Palm Real Estate Inv. Fund I, LLLP*, No. 09-11770, 2011 WL 835941 at *7 (E.D. Mich. Mar. 8, 2011 (dismissing all claims under Rule 12(b)(6) where all were within the scope of an arbitration agreement); *see also Hensel v. Cargill, Inc.*, 198 F.3d 245 (Table), No. 99-3199, 1999 WL 993775 at *4 (6th Cir. 1999) ("[L]itigation in which all claims are referred to arbitration may be dismissed."); *Shammami v. Broad Street Sec., Inc.*, 544 F. Supp. 2d 585, 588 (E.D. Mich. 2008) ("The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration.") (internal quotation and citation omitted). As these courts have recognized, "an arbitration agreement . . . 'requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate.'" *Carroll v. Onemain Fin. Inc.*, No. 14-cv-14514, 2015 WL 7717132, at *3 (E.D. Mich. Nov. 30, 2015) (quoting *Liveware Publ'g, Inc. v. Best Software, Inc.*, 252 F. Supp. 2d 74, 78-79 (D. Del. 2003)).

Even when a court declines to dismiss a complaint where the claims are subject to arbitration, a stay is mandatory pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Section 3 of the FAA provides that if any claim is "referable to arbitration under an agreement in writing for such arbitration," then a court "*shall*, on application of one of the parties, stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement …." 9 U.S.C. § 3 (emphasis added); *see also Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 625 (2009); *Hensel*, 198 F.3d 245, 1999 WL 993775 at *4. This principle applies equally when claims are arbitrable under the doctrine of equitable estoppel. *Arthur Andersen LLP*, 556 U.S. at 632.

## ARGUMENT

I. **AEAS'S CLAIMS AGAINST DENSO AND MITSUBA BASED ON AEAS'S PURCHASES FROM BOSCH ARE SUBJECT TO MANDATORY ARBITRATION AND CANNOT BE PURSUED IN FEDERAL COURT**

### A. AEAS's Purchases From Bosch Were Made Pursuant to Valid and Binding Arbitration Agreements

As set forth in the attached declarations, AEAS did not purchase Power Window Motors from either DENSO or Mitsuba. *See* Exs. 1-4 (DENSO Declarations); Exs. 5-6 (Mitsuba Declarations). Therefore, AEAS's claims are based solely on its purchases of Power Window Motors from the only other entity named in the Complaint—Bosch. *See* Complaint at ¶¶ 12, 87; Ex. 7 (Bosch Invoice). But as AEAS conceded in voluntarily dismissing all claims against Bosch, all disputes arising out of its purchases from Bosch are subject to mandatory arbitration. *See* Ex. 7 (Bosch Invoice); Ex. 8 (Bosch's Terms and Conditions) ¶ 19 ("all disputes between the parties arising out of or related to this Agreement" shall be submitted to binding arbitration in Michigan, governed by Michigan law).

As this Court held in *Spark Plugs* and *Oxygen Sensors,* Bosch's arbitration agreement with its customers is valid and binding. The very same arbitration requirement in AEAS's agreement with Bosch is at issue here. As in *Spark Plugs* and *Oxygen Sensors,* Bosch's sales agreement with AEAS makes clear that the sale of any product, including Power Window Motors, "is expressly limited to buyer's acceptance of the terms of Bosch's quotation and the terms and conditions contained [t]herein." *See* Ex. 8 (Bosch's Terms and Conditions) ¶ 1. Bosch's invoices reemphasize that every sale is subject to these same Terms and Conditions. Ex. 7 (Bosch Invoice). And, as in *Spark Plugs* and *Oxygen Sensors,* Bosch's Terms and Conditions provide that AEAS can pursue claims related to these sales only through arbitration in Michigan, under Michigan law. *See* Ex. 8 (Bosch's Terms and Conditions) ¶ 19.

As the Supreme Court held, a broadly worded arbitration clause covers Sherman Act claims. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 617, 640 (1985) (upholding decision to compel arbitration of Sherman Act claims where contract stated that "[a]ll disputes, controversies or differences which may arise" out of the agreement must be arbitrated); *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (finding that "claims under [the Sherman Act] are appropriate for arbitration"). Moreover, as this Court observed in *Spark Plugs* and *Oxygen Sensors,* it is well-established that where, as here, an arbitration agreement contains broad language, there is a strong presumption in favor of arbitration. *See* Spark Plugs/Oxygen Sensors Order at 4 ("'When faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration.'") (quoting *NCR Corp. v. Korala Assocs., Ltd.*, 512 F.3d 807, 813 (6th Cir. 2008)). Indeed, absent an "express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation omitted); *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004). This Court already found that these exact same terms required arbitration of the DPPs' Sherman Act claims in the *Spark Plugs* and *Oxygen Sensors* cases, Spark Plugs/Oxygen Sensors Order at 17-18, and there is no legal or factual basis for a different outcome here.

## B. Under the Doctrine of Equitable Estoppel, AEAS Is Required to Arbitrate Its Claims Against DENSO and Mitsuba That Are Based on Its Purchases From Bosch

AEAS has effectively conceded that its Sherman Act claims against Bosch based upon Bosch's alleged conspiracy with DENSO and Mitsuba are subject to mandatory arbitration. But rather than voluntarily dismissing the claims against DENSO and Mitsuba arising out of AEAS's purchases from Bosch, AEAS dismissed only Bosch. This Court has already determined—twice—

7

that the doctrine of equitable estoppel, as well as Michigan law and federal policy heavily favoring arbitration, do not permit AEAS to avoid its obligation to arbitrate through such contortions. *See* Spark Plugs/Oxygen Sensors Order at 17 (holding that AEAS may not "gerrymander [its] complaint[] in order to avoid arbitration."); Order for Interlocutory Appeal at 7-8 (rejecting DPPs' argument that there is a "substantial ground for difference of opinion" on this issue). There is no reason why those prior holdings would not apply in this case.

It is widely accepted that a non-signatory to a contract containing an arbitration clause may require a signatory to arbitrate, rather than litigate, claims against that non-signatory under certain circumstances. As the Supreme Court has held, "a litigant who was not a party to the relevant arbitration agreement may invoke § 3 [of the FAA] if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP*, 556 U.S. at 632. Bosch's agreements with AEAS provide that Michigan law governs the interpretation of their terms. *See* Ex. 8 (Bosch's Terms and Conditions) ¶ 19; Ex. 7 (Bosch Invoice). Under Michigan law, a non-signatory to a contract containing an arbitration clause may require a signatory to arbitrate disputes pursuant to "ordinary contract-related legal principles, including . . . estoppel." *AFSCME Council 25 v. Wayne Cty.*, 811 N.W. 2d 4, 12 (Mich. Ct. App. 2011); *Cole v. FES*, No. 10-12041, 2010 WL 3584270 (E.D. Mich. Sept. 13, 2010) at *3 ("claims against non-signatories to an arbitration agreement can still be subject to arbitration"); Order for Interlocutory Appeal at 3-4.

In its decision in *Spark Plugs/Oxygen Sensors*, this Court considered the appropriate standard under Michigan law for a non-signatory defendant to enforce an arbitration clause against a signatory pursuant to the doctrine of equitable estoppel. The Court held that to satisfy Michigan's equitable estoppel test, a non-signatory must show: (1) that the signatory has raised allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more

8

of the signatories to the contract"; and (2) that the signatory to the contract containing the arbitration clause "must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *See* Spark Plugs/Oxygen Sensors Order at 7, 12 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 946-47 (11th Cir. 1999)). Based on facts identical to those present here, the Court went on to find that both prongs of the test were met. *Id.* at 18.[4] First, the Court found it "undisputed" that the DPPs had levied claims against DENSO and its co-defendant NGK alleging "substantially interdependent or concerted misconduct." *Id.* at 13. Second, the Court found that the DPPs' joint and several liability claims relied on the terms of Bosch's agreements containing arbitration clauses. *Id.* at 13-18. The Court reasoned that through their Sherman Act claims, DPPs had alleged that the prices reflected in Bosch's sales invoices were the product of the Defendants' price-fixing conspiracy. *Id.* at 15. "Absent these Bosch sales invoices, DPPs would have suffered no damages related to purchases made from Bosch." *Id.* Therefore, as here, the DPPs' claims were "dependent on and intertwined with the Bosch sales invoices in a fundamental way," and the second prong of the equitable estoppel test, like the first prong, was satisfied. *Id.* at 15.

There is no distinction between the Court's application of the equitable estoppel test in the *Spark Plugs* and *Oxygen Sensors* cases and the application of the test here. This case involves

---

[4] DENSO and Mitsuba respectfully maintain, as DENSO did in the *Spark Plugs* and *Oxygen Sensors* cases, that satisfaction of the equitable estoppel test under Michigan law requires a showing of *either* substantially interdependent and concerted misconduct *or* that the signatory to the contract containing the arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. *See* Defendants DENSO Corporation, DENSO International America, Inc., and DENSO Products and Services Americas, Inc.'s Motion to Dismiss Direct Purchaser Plaintiffs' Complaints in the Spark Plugs and Oxygen Sensors Actions, No. 2:16-cv-13506-MOB-MKM, ECF No. 7 (Oct. 5, 2016) at 9-10. The Court need not resolve that issue here, however, based on its holding in *Spark Plugs* and *Oxygen Sensors* that the facts here satisfy both prongs of the test.

factual allegations that are identical in all relevant respects, the same legal theory, and the same contractual agreement between Bosch and AEAS.   AEAS cannot dispute that the essence of its claims here is that DENSO, Bosch, and Mitsuba engaged in "substantially interdependent or concerted misconduct."   *See* Spark Plugs/Oxygen Sensors Order at 13.   As was the case with the DPPs' complaints in *Spark Plugs* and *Oxygen Sensors*, the core of AEAS's complaint in *Power Window Motors* is an allegation that the Defendants engaged in a "common course of conduct." Complaint at ¶ 28.   AEAS specifically alleges that "[e]ach Defendant acted as the agent, principal, or joint venturer of the other Defendants" with respect to the conduct alleged.   *Id*.   AEAS also alleges that the Defendants entered into a "single" conspiracy to fix prices for Power Window Motors.   Complaint at ¶ 41.   These allegations all make clear that the Defendants' alleged misconduct was "substantially interdependent" and "concerted."   *See Brown v. Pacific Life Ins. Co.*, 462 F. 3d 384, 399 (5th Cir. 2006) (substantially interdependent or concerted misconduct test met because plaintiffs failed to allege tortious acts against non-signatories that were "separate and apart from" those alleged against signatories); *In re Titanium Dioxide Antitrust Litig*., 962 F. Supp. 2d 840, 851 (D. Md. 2013) (test met where Plaintiffs' Sherman Act claims alleged "coordinated behavior" among Defendants, and were based on the same facts) (citation omitted).

Nor can there be any doubt that, as with the claims by AEAS and other DPPs based upon sales by Bosch in *Spark Plugs* and *Oxygen Sensors,* AEAS's claims here are dependent on, and intertwined with, the Bosch agreements containing arbitration clauses.   Just as in *Spark Plugs* and *Oxygen Sensors*, AEAS alleges here that the Defendants conspired to set prices for Power Window Motors, Complaint at ¶ 3, and that as a result, AEAS "paid artificially inflated prices," *id.* at ¶ 6. As Bosch is the only entity named in the Complaint from which AEAS purchased Power Window Motors, without Bosch's sales (all of which were governed by contracts containing arbitration

clauses), AEAS would have suffered no damages. *See* Spark Plugs/Oxygen Sensors Order at 15. Furthermore, because AEAS alleges that the Defendants' conduct caused it to pay inflated prices, "the deceit or conspiracy alleged is reflected in the price terms of the various sales." *Id.* at 18. As in *Spark Plugs* and *Oxygen Sensors*, the Bosch sales invoices which spell out these price terms for AEAS's purchases of Power Window Motors expressly incorporate Bosch's arbitration clauses. *See* Ex. 7 (Bosch Invoice). Therefore, AEAS's "claims are dependent on an intertwined with the Bosch sales invoices in a fundamental way." Spark Plugs/Oxygen Sensors Order at 15; *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (claims were "undeniably intertwined" with agreements containing arbitration clauses where "it is the fact of [Plaintiff's] entry into the [agreements] containing allegedly inflated price terms that gives rise to the claimed injury.").

Any doubts about the application of equitable estoppel in this case are resolved by the broad language in Bosch's arbitration agreements. *See* Spark Plugs/Oxygen Sensors Order at 4. In *Rooyakker & Sitz, P.L.L.C. v. Plante & Moran, P.L.L.C.*, the Michigan Court of Appeals considered whether non-signatories could require arbitration under the terms of a near-identical arbitration clause, which required arbitration of "any dispute or controversy arising out of or relating to the agreement." 742 N.W.2d 409, 421 (Mich. Ct. App. 2007) (internal quotation and citation omitted); *compare with* Ex. 8 (Bosch's Terms and Conditions) ¶ 19 (requiring arbitration of "all disputes" . . . "arising out of or related to this Agreement"). The court in *Rooyakker* found that this "broad language," "vests the arbitrator with the authority to hear plaintiffs' tortious interference and defamation claims, even if they involve nonparties to the agreement." 742 N.W. 2d at 421. Similarly, in *Cole v. FES*, 2010 WL 358270 at *3, the court found that equitable estoppel was appropriate where the arbitration clause at issue provided that a dispute was arbitrable "if a

dispute arises out of or relates to this contract, or the breach thereof." Given the "broad language" of this arbitration clause, the court found that arbitration was appropriate, even as to the claims against non-signatories to the arbitration clause. *Id.* These principles apply equally to this case, where Bosch's arbitration clause is similarly broad.

Moreover, at least as to its claims against DENSO, AEAS's attempts to avoid arbitration by suing DENSO for joint and several liability are at odds with the course of dealing between DENSO and AEAS. *See* Mich. Comp. Laws Ann. § 440.1303(4) (course of performance, course of dealing, or usage of trade may give particular meaning to the terms of a parties' agreement); *Drexel Burnham Lambert, Inc. v. Mancino*, 951 F. 2d 348 (Table), No. 91-3213, 1991 WL 270809 (6th Cir. 1991) at *2 (finding agreement to arbitrate based on terms of written confirmation memoranda and course of dealing between the parties); *cf. In re Cotton Yarn Antitrust Litig.*, 505 F.3d 274, 279-280 (4th Cir. 2007) (finding arbitration agreement based on usage of trade in the textile industry). Although AEAS did not purchase Power Window Motors from DENSO, AEAS had entered into a distributor agreement with DENSO that governed the sales of all products and which contains a broadly-worded arbitration clause. *See* Ex. 10 (Email from Steve Cherry to John Dominguez (Feb. 18, 2016)); Ex. 11 (DENSO Automotive Aftermarket Distributor Agreement with All European Auto Supply, Inc.), ¶ 4.3. Consequently, if AEAS *had purchased* Power Window Motors from DENSO, any dispute based on such purchases would have been subject to the parties' agreement to arbitrate. *Id.* AEAS was thus on notice that any disputes arising out of dealings with DENSO, just like disputes arising out of dealings with Bosch, were subject to arbitration.

**C.      Because AEAS's Claims Against DENSO and Mitsuba Are Arbitrable, the Complaint Should Be Dismissed, or, at the Very Least, the Claims Must Be Stayed**

Under the law in this circuit, it is appropriate for this Court to dismiss AEAS's complaint

in its entirety, because its claims against DENSO and Mitsuba are arbitrable.  *See* Spark Plugs/Oxygen Sensors Order at 5; *Shammami*, 544 F. Supp. 2d at 588.  In *Spark Plugs* and *Oxygen Sensors*, there were some purchases from one defendant (NGK) which were not subject to arbitration, which the Court stayed pending arbitration of the remaining claims.  *See* Spark Plugs/Oxygen Sensors Order at 18-20 (discussing NGK's sales).  Here, by contrast, AEAS purchased Power Window Motors only from Bosch, and all of those purchases were made pursuant to agreements containing arbitration clauses.  AEAS has already effectively conceded that it is required to arbitrate all of its claims against Bosch.  The remaining claims against DENSO and Mitsuba, which are based entirely on their alleged joint and several liability for the Bosch sales, are likewise subject to arbitration under the doctrine of equitable estoppel.  Accordingly, this Court should dismiss AEAS's Complaint in its entirety, and require all claims to proceed in arbitration.

In the alternative, the Court must stay this litigation.  Under the FAA, once a court determines that any one of a Plaintiff's claims is "referable to arbitration under an agreement in writing," it must stay the litigation of those claims.  9 U.S.C. § 3.  The Supreme Court has held that the requirement to issue a stay applies equally when a claim is deemed arbitrable as a result of equitable estoppel.  *Arthur Andersen LLP*, 556 U.S. at 632.  As a result, because the claims against DENSO and Mitsuba are arbitrable under the doctrine of equitable estoppel, the Court must, at the very least, stay the litigation of those claims.

## **CONCLUSION**

For the foregoing reasons, DENSO respectfully requests that the Court dismiss AEAS's complaint in the *Power Window Motors* case, or, in the alternative, stay the case pending arbitration.

13

Respectfully submitted,

October 26, 2017        By:    */s/ Steven F. Cherry* _____

Steven F. Cherry
David P. Donovan
April N. Williams
WILMER CUTLER PICKERING
    HALE AND   DORR LLP
1875 Pennsylvania Avenue, NW
Washington, D.C. 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com
david.donovan@wilmerhale.com
april.williams@wilmerhale.com

*Counsel for Defendants DENSO Corporation,
DENSO International America, Inc., DENSO
International Korea Corporation, ASMO North
America, LLC, and ASMO North Carolina, Inc.*

Steven M. Zarowny (P33362)
General Counsel
DENSO International America, Inc.
24777 Denso Drive
Southfield, MI 48033
Tel.: (248) 372-8252
Fax: (248) 213-2551
steve_zarowny@denso-diam.com

*Counsel for Defendant DENSO International
America, Inc.*

*/s/ George A. Nicoud* (w/consent) _____

George A. Nicoud III
Austin Schwing
Rachel S. Brass
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street
San Francisco, CA 94105-0921
Tel.: (415) 393-8200
Fax: (415) 393-8306
TNicoud@gibsondunn.com
ASchwing@gibsondunn.com
RBrass@gibsondunn.com

14

*Counsel for Defendants Mitsuba Corporation*
*and American Mitsuba Corporation*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 26, 2017, I caused the foregoing DENSO and Mitsuba's Motion to Dismiss Direct Purchaser Plaintiff's Complaint in the Power Window Motors Case, and accompanying papers, to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Steven F. Cherry*
Steven F. Cherry
WILMER CUTLER PICKERING
  HALE AND DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel.: (202) 663-6000
Fax: (202) 663-6363
steven.cherry@wilmerhale.com

*Counsel for Defendants DENSO Corporation,
DENSO International America, Inc., DENSO
International Korea Corporation, ASMO North
America, LLC, and ASMO North Carolina, Inc.*