# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE AUTOMOTIVE PARTS ANTITRUST LITIGATION | 2:12-md-02311<br>Honorable Marianne O. Battani |
| IN RE POWER WINDOW MOTORS | Case No. 2:13-cv-02301-MOB-MKM<br>Case No. 2:15-cv-11829-MOB-MKM |
| THIS DOCUMENT RELATES TO:<br>DIRECT PURCHASER ACTION | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into on the date of the last executing signature below ("Execution Date") by and among MITSUBA Corporation and American Mitsuba Corporation (collectively, "MITSUBA") and Direct Purchaser Plaintiff, both individually and on behalf of a class of direct purchasers of Power Window Motors (the "Settlement Class"), as defined in Paragraph 10.

WHEREAS, Direct Purchaser Plaintiff is prosecuting the above *In re Automotive Parts Antitrust Litigation*, Master File No. 12-md-02311 (E.D. Mich.) ("MDL Litigation") and the direct purchaser class action *Power Window Motors Case*, 2:13-cv-002301, 2:15-cv-11829 (the "Action") on its own behalf and on behalf of the Settlement Class against, among others, MITSUBA;

WHEREAS, Direct Purchaser Plaintiff alleges that it was injured as a result of MITSUBA's participation in an unlawful conspiracy to raise, fix, maintain, and/or stabilize prices, rig bids, and allocate markets and customers of Power Window Motors (as defined in

Paragraph 6) in violation of Section 1 of the Sherman Act as set forth in Direct Purchaser Plaintiff's Class Action Complaint (2:15-cv-11829, Document No. 1) (the "Complaint");

WHEREAS, MITSUBA denies Direct Purchaser Plaintiff's allegations and has asserted defenses to Direct Purchaser Plaintiff's claims in the Action;

WHEREAS, Settlement Class Counsel (as defined in Paragraph 11) and counsel for MITSUBA conducted arm's-length settlement negotiations and participated in a mediation, during which MITSUBA provided substantial information regarding the commercial and financial constraints on its ability to pay settlement consideration, and this Agreement has been reached as a result of those negotiations and the mediation;

WHEREAS, Direct Purchaser Plaintiff, through Settlement Class Counsel, has conducted an investigation into the facts and the law regarding the Action, and has concluded that resolving the claims against MITSUBA, according to the terms set forth herein, is in the best interests of Direct Purchaser Plaintiff and the Settlement Class because of the payment of the Settlement Amount and the value of the Cooperation (as those terms are defined below) that MITSUBA has agreed to provide pursuant to this Agreement;

WHEREAS, the Action will continue against Defendants (as defined in Paragraph 3) that are not Releasees (as defined in Paragraph 8);

WHEREAS, MITSUBA, despite its belief that it is not liable for the claims asserted and its belief that it has good defenses thereto, has nevertheless agreed to enter into this Agreement to avoid further expense, inconvenience, and the distraction of burdensome and protracted litigation, and to obtain the releases, orders, and judgment contemplated by this Agreement, and to put to rest with finality all claims that have been or could have been asserted

against MITSUBA with respect to Power Window Motors, in connection with the allegations in the Action;

WHEREAS, MITSUBA has agreed to provide Cooperation (as set forth in Section F) and Cooperation Materials (as defined in Paragraph 2) to Direct Purchaser Plaintiff in the ongoing prosecution of the Action as set forth in this Agreement, and such Cooperation will aid the Direct Purchaser Plaintiff and reduce the substantial burden and expense associated with the ongoing prosecuting of this Action; and

WHEREAS, Direct Purchaser Plaintiff recognizes the benefits of MITSUBA's Cooperation and recognizes that because of joint-and-several liability, this Agreement with MITSUBA does not impair Direct Purchaser Plaintiff's ability to collect the full amount of damages to which it and the Settlement Class may be entitled in the Action:

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, it is agreed by and between MITSUBA and the Direct Purchaser Plaintiff that the Action be settled, compromised, and dismissed on the merits with prejudice as to the Releasees and except as hereinafter provided, without costs as to Direct Purchaser Plaintiff, the Settlement Class, or MITSUBA, subject to the approval of the Court, on the following terms and conditions:

A.      Definitions.

1.      "Cooperation" shall refer to those provisions set forth below in Section F.

2.      "Cooperation Materials" means any information, testimony, Document (as defined below in Paragraph 5) or other material (including information from Attorney Proffers) provided by MITSUBA under the terms of this Agreement.

3.      "Defendant" means, for purposes of this Settlement Agreement only, any of the

following:  Denso Corporation; Denso International America, Inc.; Denso International Korea Corporation; ASMO North America, LLC, ASMO North Carolina, Inc.; MITSUBA Corporation; American Mitsuba Corporation; Robert Bosch GmbH; Bosch Electrical Drives Co., Ltd., and Robert Bosch LLC.

    4.      "Direct Purchaser Plaintiff" means the Plaintiff named in the Complaint.

    5.      "Document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Rule 34(a) of the Federal Rules of Civil Procedure, including without limitation, electronically stored information.  A draft or non-identical copy is a separate document within the meaning of this term.  For purposes of this Agreement, Document shall include all non-privileged English translations in MITSUBA's custody, possession, or control.

    6.      "Power Window Motors" for purposes of this Settlement Agreement are small electric motors used to raise and lower windows in a motor vehicle.

    7.      "Opt-Out Plaintiffs" means those members of the Settlement Class who validly request exclusion from the Settlement Class.

    8.      "Releasees" shall refer to only MITSUBA Corporation and American Mitsuba Corporation, their parents, subsidiaries, affiliates, divisions, predecessors, successors, and insurers, and their respective past and present officers, directors, and employees.

    9.      "Releasors" shall refer to Direct Purchaser Plaintiff and the Settlement Class Members, as well as each of their parents, subsidiaries, affiliates, divisions, predecessors, successors, and insurers, and their respective past and present officers, directors and employees.

    10.    For purposes of this Agreement, "Settlement Class" is defined as:

> All individuals and entities who purchased Power Window Motors in the United States directly from one or more Defendants (or their subsidiaries, affiliates, or joint-ventures) from January 1, 2000 through the Execution

Date. Excluded from the Settlement Class are Defendants, their present and former parent companies, subsidiaries, and affiliates, federal governmental entities and instrumentalities of the federal government, and states and their subdivisions, agencies, and instrumentalities.

11.     "Settlement Class Counsel" means the following law firms:  Freed Kanner London & Millen LLC, 2201 Waukegan Road, Suite 130, Bannockburn, IL 60015; Kohn, Swift & Graf, P.C., 1600 Market Street, Suite 2500, Philadelphia, PA 19103; Preti, Flaherty, Beliveau & Pachios, LLP, One City Center, Portland, ME 04101; and Spector Roseman & Kodroff, P.C., 1818 Market Street, Suite 2500, Philadelphia, PA 19103.

12.     "Settlement Class Member" means each member of the Settlement Class who has not timely and validly elected to be excluded from the Settlement Class.

13.     "Settlement Amount" means US $3,060,761.00.

14.     "Settlement Fund" means the Settlement Amount plus accrued interest as set forth in Paragraph 25.

B.     Approval of this Agreement and Dismissal of Claims Against MITSUBA.

15.     On the Execution Date, Direct Purchaser Plaintiff and the MITSUBA Defendants shall be bound by this Agreement, and this Agreement shall not be rescinded except in accordance with Paragraphs 40-43 of this Agreement.

16.     Direct Purchaser Plaintiff and MITSUBA shall use their reasonable best efforts to effectuate this Agreement, including cooperating in seeking the Court's approval for the establishment of procedures (including the giving of class notice under Federal Rules of Civil Procedure 23(c) and (e)) to secure the complete and final dismissal with prejudice of the Action as to the Releasees only.

17.     Direct Purchaser Plaintiff shall submit to the Court, in a form mutually agreed upon

by MITSUBA and Settlement Class Counsel, a motion or motions seeking preliminary approval of this Agreement, authorization to disseminate notice of the proposed settlement to the Settlement Class, and a stay of all proceedings in the Action against MITSUBA by Direct Purchaser Plaintiff (other than the Cooperation) until the Court renders a final decision regarding the approval of the settlement, and, if it approves the settlement, enters the final judgment (the "Motions"). The Motions shall include the proposed form of an order preliminarily approving this Agreement, and proposed forms of notice. No less than five (5) business days before filing, Direct Purchaser Plaintiff shall submit drafts of the Motions to MITSUBA for approval, which approval shall not be unreasonably withheld.

18.     Direct Purchaser Plaintiff, at a time to be decided in its sole discretion, shall submit to the Court a motion for authorization to disseminate notice of the settlement and final judgment contemplated by this Agreement to the Settlement Class (the "Notice Motion"). The Notice Motion shall include a proposed form of, method for, and proposed dates of dissemination of notice. Before submission, MITSUBA shall have a reasonable opportunity to review and comment on the Notice Motion, and Direct Purchaser Plaintiff shall reasonably consider MITSUBA's comments. To mitigate the costs of notice and administration, Direct Purchaser Plaintiff shall use its best efforts, if practicable, to disseminate notice with any other settlements reached with other Defendants in the Action and to apportion costs of notice and administration on a pro rata basis across the applicable settlements. Further, the proposed notice shall state clearly that a member of any settlement class identified in the notice may opt out of one or more settlement classes identified in the notice while remaining a member of other settlement classes identified in the notice.

19.     Direct Purchaser Plaintiff shall seek, and MITSUBA will not object unreasonably to, the entry of a final judgment order, the text of which Direct Purchaser Plaintiff and MITSUBA

shall agree on, and such agreement will not be unreasonably withheld. The terms of that proposed final judgment order will include, at a minimum, the substance of the following provisions:

(a)     certifying the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure, solely for purposes of this settlement, as a settlement class;

(b)     finding that the Direct Purchaser Plaintiff is an adequate class representative under Rule 23;

(c)     approving finally this settlement and its terms as being fair, reasonable, and adequate as to the Settlement Class Members within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation according to the terms of the Agreement;

(d)     finding that notice provided to the Settlement Class satisfied the requirements of Rule 23 and the Due Process Clause;

(e)     as to MITSUBA, directing that the Action be dismissed with prejudice and, except as provided for in this Agreement, without costs;

(f)     reserving exclusive jurisdiction over the settlement and this Agreement, including the administration and consummation of the settlement, as well as over MITSUBA, for the duration of its provision of Cooperation pursuant to this Agreement, to the United States District Court for the Eastern District of Michigan;

(g)     determining under Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing that the judgment of dismissal as to MITSUBA shall be final;

(h)     providing that (i) the Court's certification of the Settlement Class is without prejudice to, or waiver of, the rights of any Defendant, including MITSUBA, to contest certification of any other class proposed in the MDL Litigation, (ii) the Court's findings in the final judgment order shall have no effect on the Court's ruling on any motion to certify any class in the

MDL Litigation or on the Court's rulings concerning any Defendant's motion; and (iii) no party may cite or refer to the Court's approval of the Settlement Class as persuasive or binding authority with respect to any motion to certify any such class or any Defendant's motion; and

   (i)  precluding all Settlement Class Members from asserting or prosecuting any claim or action against any Releasee released by this Agreement.

   20.  This Agreement shall become final when (i) the Court has entered a final order certifying the Settlement Class and approving this Agreement under Federal Rule of Civil Procedure 23(e) and a final judgment order has been entered dismissing the Action with prejudice as to MITSUBA and without costs other than those provided for in this Agreement, and (ii) the time for appeal or to seek permission to appeal from the Court's approval of this Agreement and entry of a final judgment as to MITSUBA described in (i) hereof has expired or, if appealed, approval of this Agreement and the final judgment as to MITSUBA have been affirmed in their entirety by the court of last resort to which such appeal has been taken and such affirmance has become no longer subject to further appeal or review. The provisions of Rule 60 of the Federal Rules of Civil Procedure shall not be taken into account in determining the above-stated times.

   21.  Neither this Agreement (whether or not it becomes final), the final judgment, nor any negotiations, documents, or discussions associated with them shall be deemed or construed to be an admission by MITSUBA, or evidence of any violation of any statute or law or of any liability or wrongdoing whatsoever by MITSUBA, or used against MITSUBA as evidence of the truth of any of the claims or allegations contained in any complaint or any other pleading filed in the MDL Litigation, and evidence thereof shall not be discoverable or used in any way, whether in the MDL Litigation, arbitration, or other proceeding, against MITSUBA. Neither this Agreement, any of its terms and provisions, any of the negotiations or proceedings connected with it, nor any other action

taken to carry out this Agreement by MITSUBA, shall be referred to, offered as evidence, or received in evidence in any pending or future civil, criminal, or administrative action, arbitration, or proceedings, except in a proceeding to enforce this Agreement, or to defend against the assertion of Released Claims, or as otherwise required by law. Nothing in this Paragraph shall prevent Direct Purchaser Plaintiff from using and/or introducing into evidence Cooperation Materials produced pursuant to Section F, against any other Defendants in the MDL Litigation, 12-md-02311.

        C.      <u>Release, Discharge, and Covenant Not to Sue.</u>

        22.     In addition to the effect of any final judgment order entered in accordance with this Agreement, upon this Agreement becoming final, as set out in Paragraph 20, and in consideration of payment of the Settlement Amount, as specified in Paragraph 24, and for other valuable consideration, the Releasees shall be completely released, acquitted, and forever discharged from any and all claims, demands, actions, suits, causes of action, whether class, individual, or otherwise in nature (whether or not any Settlement Class Member has objected to the settlement or makes a claim upon or participates in distribution of the Settlement Fund, whether directly, representatively, derivatively, or in any other capacity) under any federal, state, or local law of any jurisdiction in the United States, that Releasors, or any of them, ever had, now have, or hereafter can, shall, or may ever have, that now exist or may exist in the future, on account of, or in any way arising out of, any and all known or unknown, foreseen or unforeseen, suspected or unsuspected, actual or contingent, liquidated or unliquidated claims, injuries, damages, and the consequences thereof in any way arising out of or relating in any way to any conduct or any act or omission of the Releasees (or any of them) prior to the Execution Date concerning price fixing, bid rigging, or market, product, or customer allocation of Power Window Motors including, but not limited to,

any conduct and causes of action alleged or asserted or that could have been alleged or asserted, in any class action or other complaints filed in the Action (the "Released Claims"). Notwithstanding the foregoing, however, nothing herein shall release: (1) any claims based on indirect purchases of Power Window Motors; (2) claims based on negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, breach of product warranty, securities, or a similar basis relating to Power Window Motors; (3) claims brought outside the United States relating to purchases of Power Window Motor outside the United States; (4) claims brought under laws other than those of the United States relating to purchases of Power Window Motors outside the United States; and (5) claims concerning any product other than Power Window Motors.  After the Execution Date, Releasors shall not seek to establish liability against any Releasee as to, in whole or in part, any of the Released Claims unless the Agreement, for any reason, does not become final, or is rescinded, or otherwise fails to become effective.

23.     In addition to the provisions of Paragraph 22 of this Agreement, Releasors hereby expressly waive and release, solely with respect to the Released Claims, upon this Agreement becoming final, any and all provisions, rights, and benefits, conferred by § 1542 of the California Civil Code, which states:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR;

or by any law of any state or territory of the United States, or principle of common law, which is similar, comparable, or equivalent to §1542 of the California Civil Code.  Each Releasor may hereafter discover facts other than or different from those which he, she, or it knows or

believes to be true with respect to the claims that are released pursuant to the provisions of Paragraph 22 of this Agreement, but each Releasor hereby expressly waives and fully, finally, and forever settles and releases, upon this Agreement becoming final, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that Direct Purchaser Plaintiff has agreed to release pursuant to Paragraph 22, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

       D.    <u>Settlement Amount.</u>

       24.    Subject to the provisions hereof, and in full, complete and final settlement of the Action as provided herein, MITSUBA shall pay the Settlement Amount of $3,060,761.00.  The Settlement Amount shall be paid by wire transfer into an escrow account in United States Dollars to be administered in accordance with the provisions of Paragraph 25 (the "Escrow Account") within thirty (30) days of the later of (a) the date the Court has granted preliminary approval for settlements between MITSUBA and all plaintiffs in all of the following cases: 2:13-cv-02301 (*Power Window Motors*), 2:15-cv-11829 (*Power Window Motors*), 2:13-cv-02201 (*Fuel Injection Systems*), 2:15-cv-13423 (*Fuel Injection Systems*), 2:13-cv-01001 (*Radiators*), 2:17-cv-13147 (*Radiators*), 2:13-cv-01101 (*Starter Motors*), 2:14-cv-10674 (*Starter Motors*), 2:13-cv-02801 (*Windshield Washer Systems*), 2:14-cv-10673 (*Windshield Washer Systems*): 2:14-cv-10762 (*Windshield Washer Systems*), 2:13-cv-00901 (*Windshield Wiper Systems*), 2:13-cv-15125 (*Windshield Wiper Systems*), 2:14-cv-10774 (*Windshield Wiper Systems*); or (b) the date that MITSUBA is provided with the account number, account name, and wiring information for the Escrow Account(s).

       25.    <u>Escrow Account</u>

       (a)    An Escrow Account shall be maintained at The Huntington National Bank.  Such

escrow shall be administered under the Court's continuing supervision and control.

(b)     All payments into the Escrow Account, including any income earned thereon, shall, at the direction of Settlement Class Counsel, be invested in instruments or accounts backed by the full faith and credit of the United States Government or fully insured by the United States Government or an agency thereof, such as U.S. Treasury Bills, U.S. Treasury Money Market Funds, or a bank account insured by the Federal Deposit Insurance Corporation ("FDIC") up to the guaranteed FDIC limit. Any interest earned on any of the foregoing shall become part of the Settlement Fund. MITSUBA shall have no responsibility for, or liability in connection with, the Settlement Fund or the Escrow Account, including, without limitation, the investment, administration, maintenance, or distribution thereof.

(c)     All funds held in the Escrow Account shall be deemed and considered to be in *custodia legis* of the Court and shall remain subject to the jurisdiction of the Court, until such time as the Settlement Fund shall be distributed pursuant to this Agreement or further order(s) of the Court.

(d)     Subject to the provisions of Paragraph 27, reasonable disbursements for expenses associated with providing notice of the settlement to the Settlement Class, expenses for maintaining and administering the Settlement Fund, and taxes and expenses incurred in connection with taxation matters may be paid without approval from the Court and shall not be refundable to MITSUBA in the event the Agreement is disapproved, rescinded, or otherwise fails to become effective, to the extent such expenses have actually been expended or incurred. Any refund that becomes owed to MITSUBA pursuant to Paragraph 43 may be paid out of the Escrow Account without approval of the Court. No other disbursement from or distribution of the Settlement Fund shall be made without prior approval of the Court.

(e)     The Settlement Fund is intended by the parties hereto to be treated as a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, and to that end the parties hereto shall cooperate with each other and shall not take a position in any filing or before any tax authority that is inconsistent with such treatment.   Settlement Class Counsel shall be the administrator of the Settlement Fund as such term is defined in Treasury Regulation § 1.468B-2 and shall discharge all of the duties required of an administrator pursuant to the Treasury Regulations.   At the request of MITSUBA, a "relation back election" as described in Treasury Regulation § 1.468B-1(j) shall be made so as to enable the Settlement Fund to be treated as a qualified settlement fund from the earliest date possible, and the parties shall take all actions as may be necessary or appropriate to this end.   At the direction of Settlement Class Counsel, taxes or estimated taxes shall be paid on any income earned on the funds in the Escrow Account, whether or not Final Approval has occurred, as provided in Paragraph 20, above.   All (i) taxes (including any estimated taxes, interest, or penalties) arising with respect to the income earned by the Settlement Fund, including any taxes or tax detriments that may be imposed upon MITSUBA or any Releasee with respect to any income earned by the Settlement Fund for any period during which the Settlement Fund does not qualify as a Qualified Settlement Fund for federal or state income tax purposes shall be paid out of the Settlement Fund.   Except as set forth in this Paragraph, MITSUBA shall have no responsibility to make any tax filings related to the Settlement Fund or to pay any taxes with respect thereto, and neither MITSUBA nor any Releasee nor their respective counsel shall have any liability or responsibility for the taxes or expenses incurred in connection with taxation matters.   The Escrow Agent and Settlement Class Counsel shall indemnify and hold MITSUBA and the Releasees harmless for taxes arising with respect to the income earned by the Settlement Fund (including taxes payable by reason of such indemnification) and fees or expenses

incurred in connection with such taxes.

(f)     If this Agreement does not receive final Court approval, including final approval of the Settlement Class as defined in Paragraph 10, or if the Action is not certified as a class action for settlement purposes, then all amounts paid by MITSUBA into the Settlement Fund (other than costs expended or incurred in accordance with Paragraphs 25(d) and 27, shall be returned to MITSUBA from the Escrow Account along with any interest accrued thereon within thirty (30) calendar days of the Court's denial of final approval of the Agreement and/or Settlement Class.

26.    <u>Exclusions.</u>

Within ten (10) days after the end of the period to request exclusion from the Settlement Class, Settlement Class Counsel will cause copies of requests for exclusion from the Settlement Class to be provided to counsel for MITSUBA.  With respect to any potential Settlement Class Member that requests exclusion from the Settlement Class, MITSUBA reserves all of its legal rights and defenses.

27.    <u>Payment of Settlement Expenses</u>

MITSUBA agrees to permit use of a maximum of $125,000.00 (which limitation is effective up until the date of Final Approval of this settlement) of the Settlement Fund towards the costs of notice to the Settlement Class and the costs of administration of the Settlement Fund as set forth in Paragraph 25(d).  The notice and administration expenses are not recoverable by MITSUBA if this settlement does not become final or is rescinded or otherwise fails to become effective to the extent such funds have been (a) actually expended or (b) incurred for notice and administration costs.  Other than as set forth in this Paragraph 27, and in Paragraphs 25 and 41, MITSUBA shall not be liable for any of the costs or expenses of the litigation of the Action.  Within ten (10) business days after the Execution Date, MITSUBA will supply to Settlement Class

Counsel, in an electronic mailing format, the names and addresses of putative Settlement Class Members to whom it or its subsidiaries or affiliates have sold Power Window Motors in the United States during the Settlement Class Period to the extent they are identifiable through reasonable effort, and to the extent not previously provided to Settlement Class Counsel.

E.    The Settlement Fund.

28.    Releasors shall look solely to the Settlement Fund for settlement and satisfaction, as provided herein, of all Released Claims against the Releasees, and shall have no other recovery against any MITSUBA or any other Releasee.

29.    After this Agreement becomes final within the meaning of Paragraph 20, the Settlement Fund shall be distributed in accordance with a plan to be submitted to the Court at the appropriate time by Settlement Class Counsel, subject to approval by the Court. No Releasee shall have any responsibility, financial obligation, or liability whatsoever with respect to the investment, distribution, or administration of the Settlement Fund, including, but not limited to, the costs and expenses of such investment, distribution, or administration except as expressly otherwise provided in Paragraphs 25(d) and 27.

30.    Direct Purchaser Plaintiff and Settlement Class Counsel shall be reimbursed and indemnified solely out of the Settlement Fund for all expenses and costs, as provided by Court Order and the provisions of Paragraphs 25(d) and 27. MITSUBA and the other Releasees shall not be liable for any costs, fees, or expenses of any of Direct Purchaser Plaintiff or the Settlement Class's respective attorneys, experts, advisors, agents, or representatives, but all such costs, fees, and expenses as approved by the Court, or authorized by Paragraphs 25(d) and 27, shall be paid out of the Settlement Fund.

31.    Settlement Class Counsel's Attorneys' Fees, Reimbursement of
Expenses, and Incentive Awards for Class Representatives.

15

(a)     Subject to Court approval, Direct Purchaser Plaintiff and Settlement Class Counsel shall be reimbursed and paid solely out of the Settlement Fund for all past, current, or future litigation costs and expenses and any award of attorneys' fees.  Any incentive award to the Direct Purchaser Plaintiff, if approved by the Court, will also be paid solely out of the Settlement Fund. Attorneys' fees and costs and expenses awarded by the Court shall be payable from the Settlement Fund upon award, notwithstanding the existence of any timely-filed objections thereto, or potential appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Settlement Class Counsel's obligation to make appropriate refunds or repayments to the Settlement Fund, if and when, as a result of any appeal or further proceedings on remand, or successful collateral attack, the fee or award of costs and expenses is reduced or reversed, or in the event this settlement does not become final or is rescinded or otherwise fails to become effective.

(b)     The procedure for and the allowance or disallowance by the Court of the application by Settlement Class Counsel for attorneys' fees, costs and expenses, and incentive awards for class representatives to be paid out of the Settlement Fund are not part of this Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the settlement, and any order or proceeding relating to a request for attorneys' fees, reimbursement of costs and expenses, or incentive awards, or any appeal from any such order shall not operate to terminate or cancel this Agreement, or affect or delay the finality of the order approving the settlement.

(c)     Neither MITSUBA nor any other Releasee under this Agreement shall have any responsibility for, or interest in, or liability whatsoever with respect to any payment to Settlement Class Counsel of any fee or expense award in the Action.

F.    Cooperation.

32.    In return for the release and discharge provided herein, MITSUBA agrees to pay the Settlement Amount and agrees to use reasonable efforts to provide satisfactory and timely Cooperation, as set forth specifically in Section F, until final judgment is entered on all Power Window Motors claims made by Direct Purchaser Plaintiff against each and every one of the Defendants in the Action or dismissal with prejudice of all Power Window Motors claims made by Direct Purchaser Plaintiff against each and every one of the Defendants in the Action ("Termination Orders"), whichever is earlier.[1]  Cooperation will take place consistent with the timing set forth specifically in Section F.

33.    To the extent not already produced, MITSUBA agrees to use its reasonable best efforts to produce the following materials to Direct Purchaser Plaintiff on the timetable indicated below:

(a)    Transactional Data.  Within ninety (90) days after Settlement Counsel's request, MITSUBA will produce reasonably available pre-existing sales and cost transactional data concerning its sales of Power Window Motors to customers in the United States.  The time period for this production will be from January 1, 2000 through December 31, 2017.  MITSUBA shall consider any reasonable request by Direct Purchaser Plaintiff to produce transactional data from January 1, 1998 through December 31, 1999.  MITSUBA shall provide reasonable assistance to Direct Purchaser Plaintiff in understanding the transactional sales and cost data produced, including, if appropriate, a reasonable number of communications with Direct Purchaser Plaintiff's

---

[1] MITSUBA's Cooperation obligations shall continue until the time for appeal or to seek permission to appeal from the Court's Termination Orders has expired or, if appealed, the Termination Orders have been affirmed by the Court of last resort to which such appeal has been taken such that all Power Window Motors claims made by Direct Purchaser Plaintiff against each and every one of the Defendants in the Action are resolved and such affirmance has become no longer subject to further appeal or review.

experts or technical personnel.  Settlement Class Counsel agree that they shall maintain all data that MITSUBA produces as "Highly Confidential," as said designation is described in the protective order entered in the MDL Litigation (Dkt. No. 200) (the "Protective Order"), subject to any successful challenge that any party may make to the Protective Order or any other orders of the Court.

(b)     <u>Documents</u>.   Upon the request of Settlement Class Counsel and subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, and to the extent that the following Documents have been collected and loaded into a review tool, MITSUBA shall begin to produce Documents (including non-privileged English translations, to the extent they exist) within sixty (60) days of Settlement Class Counsel's request: (1) Documents, including any translations, provided to or seized by government entities relating to their investigation into alleged competition violations with respect to Power Window Motors; (2) non-privileged Documents concerning Power Window Motors collected and reviewed in connection with a communication, meeting, or agreement regarding Power Window Motors, by any employee, officer, or director of MITSUBA with any employee, officer, or director of another manufacturer or seller of Power Window Motors, but that were not provided to or seized by government entities; (3) Documents concerning MITSUBA's determination of MITSUBA's prices for Power Window Motors; and (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Power Window Motors, including any Annual Price Reduction ("APR") Documents.  Subject to the meet-and-confer referenced above, MITSUBA shall complete the production of the aforementioned Documents within one-hundred and twenty (120) days of Settlement Class Counsel's request.

Upon the request of Settlement Class Counsel and subject to the parties' meeting and conferring regarding any extensions concerning the timing of the completion of production, and to the extent that the following Documents have not been collected and loaded into a review tool, MITSUBA shall use reasonable best efforts to produce such Documents (including English translations, to the extent they exist) from centrally-maintained files and from the files of a reasonable number of custodians to be identified by Direct Purchaser Plaintiff within two hundred and seventy-five (275) days of Settlement Class Counsel's request: (1) Documents, including any translations, provided to or seized by government entities relating to their investigation into alleged competition violations with respect to Power Window Motors; (2) non-privileged Documents concerning Power Window Motors collected and reviewed in connection with a communication, meeting, or agreement regarding Power Window Motors, by any employee, officer, or director of MITSUBA with any employee, officer, or director of another manufacturer or seller of Power Window Motors, but that were not provided to or seized by government entities; (3) Documents concerning MITSUBA's determination of MITSUBA's prices Power Window Motors; and (4) Documents soliciting requests for quotation ("RFQ"), bids submitted in response to RFQs, RFQ award notifications, and post-award price adjustments for Power Window Motors, including any Annual Price Reduction ("APR") Documents.  To the extent that any such Documents described by this Paragraph 33(b) are not maintained in an active computer system or otherwise require special efforts or procedures to collect and produce, Settlement Class Counsel and MITSUBA shall meet and confer on collecting and producing such Documents.

        (c)       MITSUBA shall not be required to disclose to Settlement Class Counsel the specific government entities to which documents were provided or to which documents were produced. MITSUBA will not be required to make available to Settlement Class Counsel any documents

protected by the attorney-client privilege, the attorney work product doctrine, any applicable privilege under foreign or domestic law, or whose disclosure is prohibited by any court order, foreign or domestic law, or by a government entity. Notwithstanding the foregoing sentence, no Document shall be withheld under a claim of privilege if produced to any government entity, unless clawed back from that government entity pursuant to Rule 502 or otherwise.

If MITSUBA produces Documents or provides declarations or written responses to discovery to any party in the Action or in any other Power Window Motors action within 2:13-cv-02301 (a "Relevant Production"), MITSUBA shall produce all such Documents, declarations, or written discovery responses to Settlement Class Counsel contemporaneously with making the Relevant Production to the extent such Documents, declarations, or written discovery responses have not previously been produced by MITSUBA to Settlement Class Counsel. In addition, MITSUBA shall provide Direct Purchaser Plaintiff with all cooperation concerning Power Window Motors that it provides pursuant to any settlement agreement with any other party in this MDL Litigation unless it relates to information that is commercially sensitive in the context of MITSUBA's relationships with its customers. To the extent that such cooperation includes any attorney proffer, witness interviews, or depositions of witnesses in addition to those already provided for in Paragraph 35 below, Settlement Class Counsel shall be permitted to attend and/or participate in such attorney proffer, witness interviews or depositions, and shall be entitled to ask questions for a period up to three (3) hours at any interview or deposition (provided that this shall not expand the time permitted for any deposition). All such additional Cooperation shall be coordinated, to the extent reasonably practicable, between Settlement Class Counsel and counsel for any other party in this MDL Litigation for which MITSUBA is providing cooperation concerning Power Window Motors pursuant to a settlement agreement.

34. This Agreement does not restrict Settlement Class Counsel from noticing, attending, and/or participating in any deposition in the MDL Litigation. In addition to the depositions set forth in Paragraph 35, if any party in the MDL litigation other than Direct Purchaser Plaintiff deposes a MITSUBA current or former employee, Settlement Class Counsel may cross-notice, attend, and/or participate in such deposition, and Settlement Class Counsel may ask questions for a combined total of three (3) hours at such deposition, provided that the time for participation of Settlement Class Counsel shall not expand the time permitted for the deposition as may be provided by the Court, and Settlement Class Counsel will not ask the Court to enlarge the time of any deposition noticed of a MITSUBA current or former employee. Participation by Settlement Class Counsel in the depositions discussed in this Paragraph will not limit the number of depositions to be provided under Paragraphs 35 below. Settlement Class Counsel agree to use their best efforts to ensure that any depositions taken under Paragraph 35 below are coordinated with any other deposition noticed in the MDL Litigation to avoid unnecessary duplication. In the event Direct Purchaser Plaintiff has settled with all defendants in the Action, Direct Purchaser Plaintiff will forego participating in depositions of MITSUBA current or former employees scheduled by other plaintiff groups in the Action provided that if: (1) this Agreement does not receive final approval, or (2) or any other settlement in that Action does not receive final approval as set forth in Paragraph 20, then Direct Purchaser Plaintiff may, at a later date, take depositions of any MITSUBA current or former employees who were previously deposed in the Action subject to the limitations of this Paragraph. Nothing herein shall alter, limit, or otherwise affect rights of Direct Purchaser Plaintiff to take depositions of MITSUBA employees subject to Paragraph 35 of this Agreement. Settlement Class Counsel may attend and participate in any depositions of MITSUBA in this Action noticed by any other party.

35.     To the extent reasonably practicable, any attorney proffers, witness interviews, or depositions provided pursuant to the below obligations shall be coordinated with, and occur at the same time as, the attorney proffers, witness interviews, and depositions to be provided in connection with settlements of Power Window Motors claims brought by other claimants entered into by MITSUBA in the MDL Litigation.  If any such interviews or depositions take place outside of the country of the witness's or deponent's residence, Direct Purchaser Plaintiff shall reimburse MITSUBA for such person's economy class fare and $450 per day for lodging and expenses.  The maximum reimbursement to MITSUBA for any witness shall be $2,250.  In no event shall Direct Purchaser Plaintiff be responsible for reimbursing such person for time or services rendered.  If an interview and a deposition of an individual occur during the same trip, the above limitations will apply to that trip.

(a)     If requested by Settlement Class Counsel following the entry of any order preliminarily approving this Agreement, MITSUBA's counsel will make themselves available in the United States within thirty (30) business days to provide an attorney's proffer to Settlement Class Counsel of facts known to them regarding the claims asserted by Direct Purchaser Plaintiff in the Power Window Motors case.  If requested, the proffer shall include the identity, if any, of all current and former employees, directors, and officers of MITSUBA who: (1) were interviewed by any government entities in connection with alleged price-fixing, bid rigging, customer allocation, market allocation, and/or other unlawful anticompetitive activity with respect to Power Window Motors; (2) appeared before the grand jury in the DOJ's investigation into alleged antitrust violations with respect to Power Window Motors; or (3) were disclosed to the DOJ as having knowledge or information relating to the DOJ's investigation into alleged antitrust violations with respect to Power Window Motors.  Counsel for MITSUBA shall not be required to

disclose to Settlement Class Counsel the identities of any government entities to which each such current or former employee, director, or officer of MITSUBA was identified or before which they appeared. Thereafter, MITSUBA's counsel will make themselves available for reasonable follow-up conversations. It is understood that neither MITSUBA nor its counsel have any obligation to seek new or additional information or documents from any MITSUBA employees, officers, or directors; however, MITSUBA will in good faith consider requests for new or additional information or documents, and will produce such information or documents, if appropriate, in its discretion.

(b)    Notwithstanding any other provision in this Agreement, Settlement Class Counsel shall maintain all statements made by MITSUBA's counsel as "Highly Confidential," as said designation is described in the Protective Order and shall not use the information so received for any purpose other than the prosecution of the claims in the MDL Litigation, 12-md-02311, and will not attribute any information obtained from an attorney's proffer pursuant to this Agreement to MITSUBA or its counsel. The parties and their counsel further agree that any statements made by MITSUBA's counsel in connection with or as part of this settlement, including the proffer(s) referred to in Paragraph 35(a), shall be governed by Federal Rule of Evidence 408. Notwithstanding anything herein, Settlement Class Counsel may use information contained in such statements in the prosecution of the claims in the MDL Litigation, 12-md-02311, and rely on such information to certify that, to the best of Settlement Class Counsel's knowledge, information, and belief, such information has evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation or discovery.

(c)    Class Counsel will not seek interviews or depositions of MITSUBA's directors, officers, or employees at this time. If, however, Settlement Class Counsel reasonably believe that

testimony from MITSUBA is necessary for use in a scheduled trial of this Action, then upon reasonable notice after preliminary approval of this Agreement, MITSUBA shall use its reasonable best efforts to make available for interviews and depositions, upon at least 60 days' notice, unless extenuating circumstances exist, via video or teleconference or at a mutually agreed-upon location or locations, up to eight (8) persons for interviews and depositions (as set forth in Paragraphs 35(c) and (d)), whom Settlement Class Counsel select, who may be current directors, officers, or employees of MITSUBA who Settlement Class Counsel reasonably and in good faith believe possess knowledge of facts or information that would reasonably assist Direct Purchaser Plaintiff in the prosecution of the MDL Litigation.  It is understood that MITSUBA may be unable to make available for interviews, depositions, or trial testimony or any other court proceedings any individual who is no longer an officer, director, or employee of MITSUBA.  It is also understood that the above-referenced limit of eight (8) persons to be made available for interviews and depositions is intended to be a limitation for cooperation in this settlement and other settlements between direct purchaser plaintiffs in the following cases: Fuel Injection Systems (Case No. 2:13-cv-02201-MOB-MKM); Radiators (Case No. 2:13-cv-01001-MOB-MKM); Starters (Case No. 2:13-cv-01101-MOB-MKM); Windshield Washer Systems (Case No. 2:13-cv-00901-MOB-MKM); and Windshield Wiper Systems (Case No. 2:13-cv-00901-MOB-MKM).

(d)      Interviews shall each be limited to a total of seven (7) hours over one day and should occur via video or teleconference.  Should Class Counsel elect to conduct the interview(s) in person and to the extent that a person to be interviewed is not reasonably available in the United States for an interview, the interview will be conducted at a mutually agreed upon location elsewhere.

(e)      Consistent with Paragraph 35(c), upon reasonable notice, MITSUBA shall, at Settlement Class Counsel's request, use its reasonable best efforts (i) to make available to appear

24

for deposition up to four (4) persons whom Settlement Class Counsel select from among the persons who have been chosen for interviews pursuant to Paragraph 35(c), and/or (ii) to provide up to two (2) declarations/affidavits from among the same persons who have been chosen for interviews and depositions pursuant to Paragraph 35(c) and Paragraph 35(d).  If MITSUBA is unable to make those same persons available for deposition or to provide a declaration or affidavit, then Settlement Class Counsel may select a substitute deponent or declarant/affiant.  To the extent that a person to be deposed is not reasonably available in the United States for a deposition, the deposition will be conducted at a mutually agreed upon location elsewhere.  Each deposition shall be limited to a total of seven (7) hours over one day, unless otherwise agreed.  Written notice by Settlement Class Counsel to MITSUBA's counsel, which shall be provided at least 60 days prior to the requested deposition date unless extenuating circumstances exist, shall constitute sufficient service of notice for such depositions.  If Settlement Class Counsel request declarations/affidavits, such affidavits and declarations will be provided in English or in Japanese with an acceptable English translation.  It is understood that the above-referenced limits of four (4) persons to be made available for depositions and two (2) declarations/affidavits are intended to be limitations for cooperation in this settlement and other settlements between MITSUBA and direct purchaser plaintiffs in the following cases:  Fuel Injection Systems (Case No. 2:13-cv-2201-MOB-MKM); Radiators (Case No. 2:13-cv-01001-MOB-MKM); Starters (Case No. 2:13-cv-01101-MOB-MKM); Windshield Washer Systems (Case No. 2:13-cv-00901-MOB-MKM); and Windshield Wiper Systems (Case No. 2:13-cv-00901-MOB-MKM).

(f)      It is understood that MITSUBA may be unable to make available for interviews, depositions, or trial testimony or any other court proceedings any individual who is no longer an officer, director, or employee of MITSUBA.

(g)     In addition to its Cooperation obligations set forth herein, MITSUBA agrees to use its reasonable best efforts to produce through affidavit(s), declaration(s), and/or deposition testimony, in Settlement Class Counsel's discretion, representatives qualified to authenticate, establish as business records, or otherwise establish any other necessary foundation for admission into evidence of any of MITSUBA's Documents or Transactional Data produced or to be produced, and to the extent possible, any Documents produced by other Defendants or third-parties in this Action.  Settlement Class Counsel agree to use reasonable efforts to obtain stipulations that would avoid the need to depose MITSUBA witnesses for the purpose of obtaining such evidentiary foundations.

(h)     Direct Purchaser Plaintiff and Settlement Class Counsel agree they will not use the information provided by MITSUBA or the other Releasees or their representatives under this Agreement for any purpose other than the prosecution of claims in the MDL Litigation, and will use it in the MDL Litigation consistent with the Protective Order and will not use it beyond what is reasonably necessary for the prosecution of claims in the MDL Litigation or as otherwise required by law.  All Documents and other Cooperation Materials provided pursuant to this Agreement shall be governed by the terms of the Protective Order in the Action.

36.     MITSUBA's obligations to provide Cooperation shall not be affected by the releases set forth in this Agreement.  Unless this Agreement is rescinded, disapproved, or otherwise fails to take effect, MITSUBA's obligations to provide Cooperation under this Agreement shall continue in accordance with the provisions of Section F.

37.     In the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraph 20, including final approval of the Settlement Class as defined in Paragraph 10, or in the event that it is terminated by either party under any provision herein, the

parties agree that neither Direct Purchaser Plaintiff nor Settlement Class Counsel shall be permitted to introduce into evidence against MITSUBA, at any hearing or trial, or in support of any motion, opposition, or other filing in the Action or in any other federal or state or foreign action alleging a violation of any law relating to the subject matter of the Action, any information provided by MITSUBA's counsel as part of its attorney's proffer, any deposition testimony, any Documents, or any other Cooperation Materials provided by MITSUBA and/or the other Releasees, their counsel, or any individual only made available by MITSUBA pursuant to Cooperation (as opposed to information obtained in discovery in the Action or from other sources or pursuant to a court order other than a court order enforcing the Cooperation obligations).  This limitation shall not apply to any discovery of MITSUBA in which Settlement Class Counsel participates as part of the MDL Litigation.  Notwithstanding anything contained herein, Direct Purchaser Plaintiff and the Settlement Class are not relinquishing any rights to pursue discovery against MITSUBA in the event that this Agreement fails to receive final approval by the Court as contemplated in Paragraph 20 hereof, including final approval of the Settlement Class as defined in Paragraph 10, or in the event that it is terminated by either party under any provision herein.

38.     MITSUBA need not respond to discovery requests or motions made pursuant to the Federal Rules of Civil Procedure from Direct Purchaser Plaintiff or otherwise participate in the Action during the pendency of the Agreement.  This suspension of discovery and any pending motions shall be without prejudice to reviving such discovery or motions if this Agreement fails to receive final approval by the Court or in the event that it is terminated by either party under any provision herein.  Other than to enforce the terms of this Agreement, neither MITSUBA nor Direct Purchaser Plaintiff shall file motions against the other in the Action during the pendency of the Agreement.

27

39.     If Settlement Class Counsel believes that MITSUBA has refused to use reasonable efforts to cooperate under the terms of this Agreement, Settlement Class Counsel shall meet and confer with MITSUBA.  Upon reaching an impasse in any meet and confer, Settlement Class Counsel may seek an Order from the Court compelling MITSUBA to use reasonable best efforts. Nothing in this provision shall limit in any way MITSUBA's ability to defend the level of cooperation provided or to defend compliance with the terms of the Cooperation provisions in this Agreement.

G.     <u>Rescission</u>

40.     The Agreement is subject to rescission based on timely requests for exclusion by certain Opt-Out Plaintiffs in accordance with the terms set forth in a confidential letter ("Confidential Letter") between MITSUBA and the Settlement Class Members. The Confidential Letter may be provided to the Court for in camera review upon its request.

41.     Within ten (10) business days after the actual receipt by MITSUBA of the requests for exclusion from Settlement Class Counsel, MITSUBA's counsel and Settlement Class Counsel shall confer for the purpose of determining whether this Agreement is subject to rescission accordance with the terms of the Confidential Letter.  If they cannot agree, MITSUBA and/or Settlement Class Counsel shall petition the Honorable Daniel Weinstein (ret.) to resolve the dispute.  Judge Weinstein's decision shall be final and non-appealable

42.     If the Court refuses to approve this Agreement or any part hereof, including if the Court does not certify a settlement class in accordance with the specific Settlement Class definition set forth in this Agreement, or if such approval is modified or set aside on appeal, or if the Court does not enter the final judgment provided for in Paragraph 20 of this Agreement, or if the Court enters the final judgment and appellate review is sought, and on such review, such final judgment

is not affirmed in its entirety, then MITSUBA and Direct Purchaser Plaintiff shall each, in their sole discretion, have the option to rescind this Agreement in its entirety.   The provisions of Paragraphs 25(d) and 27 of this Agreement shall remain in effect in the event this Agreement is rescinded.   Written notice of the exercise of any such right to rescind shall be made according to the terms of Paragraph 53.  A modification or reversal on appeal of any amount of Settlement Class Counsel's fees or costs and expenses or incentive payments awarded by the Court from the Settlement Fund shall not be deemed a modification of all or a part of the terms of this Agreement or such final judgment.

43.    In the event that this Agreement does not become final as set forth in Paragraph 20, or this Agreement otherwise is terminated pursuant to Paragraphs 40-42, then this Agreement shall be of no force or effect and any and all parts of the Settlement Fund in the Escrow Account (including interest earned thereon) shall be returned to MITSUBA within thirty (30) days, less only disbursements made, or the amount of obligations incurred in accordance with Paragraphs 25(d) and 27.  MITSUBA and Direct Purchaser Plaintiff expressly reserve all their respective claims, rights and defenses if this Agreement does not become final.

44.    This Agreement shall be construed and interpreted to effectuate the intent of the parties, which is to provide, through this Agreement, for a complete resolution of the relevant claims with respect to each Releasee as provided in this Agreement in exchange for the payment of the Settlement Amount and Cooperation by MITSUBA.

H.    <u>Miscellaneous.</u>

45.    MITSUBA shall submit all materials required to be sent to appropriate Federal and State officials pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. §1715.

46.     MITSUBA, Direct Purchaser Plaintiff, and Settlement Class Counsel agree not to disclose publicly or to any other person the terms of this Agreement until this Agreement is fully executed by all parties without the express written consent of the other party.

47.     This Agreement does not settle or compromise any claim by Direct Purchaser Plaintiff or any Settlement Class Member asserted in the Complaint or, if amended, any subsequent Complaint, against any Defendant or alleged co-conspirator other than MITSUBA and the other Releasees.  All rights against such other Defendants or alleged co-conspirators are specifically reserved by Direct Purchaser Plaintiff and the Settlement Class.  All rights of any Settlement Class Member against any and all former, current, or future Defendants or co-conspirators or any other person other than MITSUBA and the other Releasees for sales made by MITSUBA and MITSUBA's alleged illegal conduct are specifically reserved by Direct Purchaser Plaintiff and the Settlement Class Members.  MITSUBA's sales to the class and its alleged illegal conduct shall, to the extent permitted or authorized by law, remain in the Action as a potential basis for damage claims and shall be part of any joint-and-several liability claims against other current or future Defendants in the Action or other persons or entities other than MITSUBA and the other Releasees.

48.     The United States District Court for the Eastern District of Michigan shall retain jurisdiction over the implementation, enforcement, and performance of this Agreement, and shall have exclusive jurisdiction over any suit, action, proceeding, or dispute arising out of or relating to this Agreement or the applicability of this Agreement that cannot be resolved by negotiation and agreement by Direct Purchaser Plaintiff and the Settlement Class and MITSUBA, including challenges to the reasonableness of any party's actions.  This Agreement shall be governed by and interpreted according to the substantive laws of the state of Michigan without regard to its choice of law or conflict of laws principles.  MITSUBA will not object to complying with any of the

provisions outlined in this Agreement on the basis of jurisdiction.

49.     This Agreement constitutes the entire, complete, and integrated agreement among Direct Purchaser Plaintiff and the Settlement Class and MITSUBA pertaining to the settlement of the Action against MITSUBA, and supersedes all prior and contemporaneous undertakings, communications, representations, understandings, negotiations, and discussions, either oral or written, between Direct Purchaser Plaintiff and MITSUBA in connection herewith.   This Agreement may not be modified or amended except in writing executed by Direct Purchaser Plaintiff and MITSUBA and approved by the Court.

50.     This Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of Direct Purchaser Plaintiff and MITSUBA.  Without limiting the generality of the foregoing, upon final approval of this Agreement each and every covenant and agreement made herein by Direct Purchaser Plaintiff or Settlement Class Counsel shall be binding upon all Settlement Class Members and Releasors.  The Releasees (other than the MITSUBA entities that are parties hereto) are third-party beneficiaries of this Agreement and are authorized to enforce its terms applicable to them.

51.     This Agreement may be executed in counterparts by Direct Purchaser Plaintiff and MITSUBA, and a facsimile signature shall be deemed an original signature for purposes of executing this Agreement.

52.     Neither Direct Purchaser Plaintiff nor MITSUBA shall be considered to be the drafter of this Agreement or any of its provisions for the purpose of any statute, case law, or rule of interpretation or construction that would or might cause any provision to be construed against the drafter of this Agreement.

53.     Where this Agreement requires either party to provide notice or any other

communication or document to the other, such notice shall be in writing, and such notice, communication or document shall be provided by facsimile, or electronic mail (provided that the recipient acknowledges having received that email, with an automatic "read receipt" or similar notice constituting an acknowledgement of an email receipt for purposes of this Paragraph), or letter by overnight delivery to the undersigned counsel of record for the party to whom notice is being provided.

54.     Each of the undersigned attorneys represents that he or she is fully authorized to enter in to the terms and conditions of, and to execute, this Agreement, which is subject to Court approval.

Dated: July **19** , 2018

*William H. London*

Steven A. Kanner
William H. London
Michael E. Moskovitz
**FREED KANNER LONDON & MILLEN LLC**
2201 Waukegan Road, Suite 130
Bannockburn, IL 60015
Telephone: (224) 632-4500
skanner@fklmlaw.com
wlondon@fklmlaw.com
mmoskovitz@fklmlaw.com

Dated: July **19**, 2018

*William E. Hoese*

Joseph C. Kohn
William E. Hoese
Douglas A. Abrahams
**KOHN, SWIFT & GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
dabrahams@kohnswift.com

Dated: July 19, 2018

Gregory P. Hansel
Randall B. Weill
Michael S. Smith
**PRETI, FLAHERTY, BELIVEAU
  & PACHIOS LLP**
One City Center, P.O. Box 9546
Portland, ME 04101
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
msmith@preti.com

Dated: July 19, 2018

Eugene A. Spector
William G. Caldes
Jonathan M. Jagher
**SPECTOR ROSEMAN & KODROFF, P.C.**
1818 Market Street, Suite 2500
Philadelphia, PA 19103
Telephone: (215) 496-0300
espector@srkattorneys.com
wcaldes@srkattorneys.com
jjagher@srkattorneys.com

*Interim Co-Lead Class Counsel and Settlement
Class Counsel*

Dated: July 19, 2018

George A. Nicoud III
Rachel S. Brass
Eli M. Lazarus
**GIBSON, DUNN & CRUTCHER LLP**
555 Mission Street, Suite 3000
San Francisco, CA 94105
Telephone: (415) 393-8200
TNicoud@gibsondunn.com

*Counsel for Defendants Mitsuba Corporation and
American Mitsuba Corporation*

33